UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                         Criminal Case No. 11-20776

Brian Ashbourne,                           Honorable Sean F. Cox

      Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO SUPPRESS**

     In this action, Defendant Brian Ashbourne ("Ashbourne") is charged with drug and
weapons offenses. The matter is currently before the Court on Ashbourne's Motion to Suppress,
which asks the Court to suppress evidence seized from an apartment on Brooklyn Street in
Detroit, Michigan. The Court held an evidentiary hearing on April 19, 2012. For the reasons
set forth below, the Court shall DENY Defendant's Motion to Suppress.

**BACKGROUND**

     In this action, Ashbourne is charged with: 1) Non-Resident Illegal Alien in Possession of
a Firearm, in violation of 18 U.S.C. §922(g)(5) (Count One); 2) Possession with Intent to
Distribute a Controlled Substance, in violation of 21 U.S.C. §841(a)(1) (Count Two); and 3)
Possessing a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C.
§924(c) (Count Three). The Indictment also contain forfeiture allegations.

     On February 25, 2012, Ashbourne filed a Motion to Suppress. In this motion, Ashbourne
contends that: 1) the initial warrantless search of the apartment was unlawful and no exception to

the warrant requirement exists under the facts; 2) the search warrant that was subsequently obtained after the initial warrantless entry was tainted by the illegal search; and 3) the search warrant that was subsequently obtained was not supported by probable cause and, given the existence of the Michigan Medical Marijuana Act, Mich. Comp. Laws § 333.26424 *et seq*. ("MMMA"), the odor of marijuana is not sufficient to establish probable cause that marijuana is being possessed "in a criminal manner." (Def.'s Br. at 10).

With the issues having been so framed by the parties, the Court held an evidentiary hearing on May 1, 2012. The Government presented one witness at the hearing, Sergeant Jeffrey Pacholski. Ashbourne did not call any witnesses.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witness who testified at the evidentiary hearing, allowing for this Court to assess credibility, having reviewed all matters of record in this case, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

Jeffrey Pacholski is a Sergeant with the City of Detroit's Police Department. He has been with the City of Detroit's Police Department for more than twenty-three years. He is also a task force agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). He has been with the ATF for approximately three and half years.

Pacholski was working with an other ATF task force agent, who is also a Detroit police

---

[1]To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

officer, Carmen Diaz, on an investigation involving Ashbourne.

Diaz was working with a confidential source of information. That confidential informant ("CI") had provided Diaz and Pacholski with reliable information in the past. The CI described a Jamaican male by the first name of Sean. The CI stated that he/she had contact with "Sean" at a loft style apartment at 2233 Brooklyn in Detroit, Michigan. The CI stated that he/she had accompanied a friend to an apartment at that address and had purchased an amount of marijuana. The CI stated that there was about seventy pounds of marijuana, and some firearms, in the apartment. "Sean" told the CI that he had good quality marijuana for sale and to spread the word.

Diaz later conducted surveillance on 2233 Brooklyn and observed an individual matching the description of the person identified as Sean. Diaz observed that man receive a large box that was delivered to that address through UPS parcel service.

The CI then made a controlled purchase of marijuana from Sean in November of 2011, in the apartment building at 2233 Brooklyn.

Diaz then contacted UPS security and asked that they flag any suspicious packages. On December 2, 2011, UPS security told both Pacholski and Diaz that they had found a suspicious package that was addressed to "Christopher Johnston – Johnston Renovations" at 2233 Brooklyn Detroit, Michigan, Apartment Number 129. Although the package indicated that it had been sent from Twin Falls, Idaho, UPS determined that it had actually been sent from Arizona.

Diaz contacted the U.S. Customs and Border Patrol Agency to obtain the services of a narcotics dog and the dog gave a positive indication for the presence of narcotics in the package. Diaz obtained a search warrant for the package and opened it. The package contained a large

compressed bale of marijuana, that weighed approximately thirty pounds.  The package contents was field tested and tested positive as marijuana.  The agents then resealed the package so that they could make a controlled delivery of the package.

The agents brought about a controlled delivery at approximately 7:30 p.m. on December 2, 2011, at 2233 Brooklyn.  There were two undercover officers dressed as UPS employees to execute the controlled delivery.  Pacholski was not one of those undercover agents.  Rather, he was part the team that was on standby to protect the undercover officers executing the controlled delivery.

The uncover officers with the package entered the apartment building at 2233 Brooklyn. After entering the building, the undercover officers encountered Ashbourne.  Ashbourne asked them about the package they had.  Ashbourne stated that he was not Christopher Johnston but that he would taken them to Johnston or the apartment that was on the package and take possession of it at the apartment.  Ashbourne then led the officers further into the hallway on the first floor of the building.  As they were approaching the end of the hallway, where Ashborne had indicated Apartment 129 was, they then encountered a second person, Christopher Pitter. Pitter appeared nervous and kept his hand in his pocket, which caused the officers to believe that Pitter was armed.  When the officers asked Ashbourne where Apartment 129 was, he responded by pointing to an exit door, which led to common courtyard area behind the building. Ashbourne demanded the package and, fearing that Pitter was armed, they gave Ashborne the package.

Another agent on the scene then opened the building door and let other officers on the standby raid team, including Pacholski, into the building.

4

Pacholski came into contact with Pitter, at the end of the hallway where Apartment Number 127 and 128 were located. There was no Apartment Number 129 in the building. Pacholski identified himself as a police officer and told Pitter to stop. Pitter did not stop and made a right hand turn into a stairway area. Pacholski continued after Pitter and ultimately detained him on the stairway. Pitter told Pacholski that he was in the building visiting a friend who lived in the last apartment in the hallway, but he could not provide that name of that friend. In an attempt to confirm Pitter's story, Pacholski knocked on Apartment Number 127. A man answered the door and stated that while he had seen Pitter in the building before, he did not know his name and he was not there to see him.

Pacholski then knocked on Apartment Number 128 and announced, in a loud voice, that he was a police officer. Pacholski heard noise in the apartment and then a female named Tasha opened the door. Pacholski immediately felt and smelled marijuana. Based on his experience, Pacholski recognized the strong odor of marijuana as being unburned (raw), not burned marijuana. As he questioned Tasha, Pacholski continued to hear noises coming from inside Apartment Number 128. Tasha told Pacholski that her Uncle Jerome was in the apartment with her.

Pacholski asked Tasha to step outside into the hallway, and called out for Jerome several times. No one from inside the apartment responded. Pacholski and the other officers then entered the apartment. Once in the apartment, the officers conducted a brief protective sweep. They observed an open window in the western bedroom of the apartment. In the eastern bedroom, they observed two bales of marijuana that were packaged similarly to the one that was involved in the controlled delivery. In the kitchen, the officers observed an assault pistol on the

top of the refrigerator. The officers did not find Jerome, or anybody else, in the apartment

Meanwhile, while officers were securing Apartment Number 128, Diaz was in the process of obtaining a search warrant for the apartment. The officers had already obtained an anticipatory search warrant for Apartment Number 129 but, as they learned, there was no Apartment Number 129 in the building.

Diaz returned with the search warrant, and the officers searched Apartment Number 128 thoroughly and seized evidence, including: 26 kilograms of marijuana from the upper East bedroom, another 30.8 kilograms of marijuana in various gallon sized bags in the East bedroom, various firearms, six cell phones, various items of narcotics distribution materials, $2,300 in cash, and a marriage license in the name of Brian Ashbourne.

Other officers later located and detained Ashbourne in another area of the apartment building. Ashbourne did not have the package with him at the time. The officers later found the package in a vacant unit or storage area in the building. Ashborne later told the officers that he lived in Apartment 128 and he had rental receipts for the apartment on his person.

## CONCLUSIONS OF LAW

I.      **Exigent Circumstances Justified The Officers' Initial Warrantless Entry Into The Apartment.**

Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586 (1980). The warrant requirement, however, is subject to "a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). One well-established exception to the warrant requirement is the "exigent circumstances" exception, when emergency circumstances excuse the need for a warrant.

The Sixth Circuit "has long recognized" that "exigent circumstances will be present when there is an urgent need to prevent evidence from being lost or destroyed." *United States v. Sangineto-Miranda*, 859 F.2d at 1511. "'This need may be particularly compelling where narcotics are involved, for 'narcotics can be easily and quickly destroyed while a search is progressing.'" *Id.* (quoting *United States v. Socey,* 846 F.2d 1439, 1444 (D.C. Cir. 1988)).

The burden is on the Government to demonstrate exigency. *United States v. Sangineto-Miranda*, 859 F.2d at 1511. To establish this exception, the Government "must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *Id.* at 1512. The Government has met that burden here.

"[A] police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a residence if he can demonstrate: 1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Id.*

Sergeant Pacholski had a reasonable belief that a third party was inside of Apartment Number 128 because the woman who opened the door to Apartment Number 128 told him that her uncle Jerome was in the apartment. In addition, while he was speaking to Tasha, Pacholski continued to hear noise coming from within the apartment.

Given the events that occurred, Pacholski had a reasonable belief that a third party in the apartment was aware that the police were on their trail such that destruction of the evidence would likely occur.

The officers knew that a confidential informant, who had provided reliable information in

the past, had observed narcotics in the apartment.  When Tasha opened the apartment door,

Pacholski felt and smelled a strong odor of raw marijuana.  And, at the time that he entered the

apartment, Ashborne had not been located by the officers.  Thus, the officers knew that

Ashbourne would be able to contact the person or persons inside Apartment Number 128, via

cell phone or otherwise, and instruct them to destroy evidence.  *See e.g., United States v.*

*Johnson*, 2012 WL 247947 (6th Cir. 2012).[2]

Accordingly, exigent circumstances justified the officers' warrantless entry into, and

protective sweep of, Apartment Number 128.

## II.     The Search Warrant Was Supported by Probable Cause.

The Fourth Amendment permits an issuance of a search warrant upon showing of

probable cause.  *United States v. Thomas*, 650 F.3d 300, 307 (6th Cir. 2010).  In order to

establish "probable cause sufficient to justify a search warrant, the proponent must submit an

affidavit that indicate[s] a fair probability that evidence of a crime will be located on the

premises of the proposed search."  *United States v. Dyer*, 580 F.3d 386 (6th Cir. 2009) (*citing*

*United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)).

Whether the information in the affidavit satisfies the "fair probability" requirement

"depends on the totality of the circumstances." *United States v. Frazier*, 423 F.3d 526, 531 (6th

Cir 2005).  "The probable cause standard is a 'practical, non-technical conception' that deals

with the 'factual and practical considerations of everyday life.'" *Id.*

---

[2]Although the Court need not address it further, given its conclusion that the imminent destruction of evidence justified the entry, the Court also concludes that an additional exigency – a risk of danger to the police officers – justified the warrantless entry into Apartment Number 128.

The magistrate's determination of probable cause is "afforded great deference and should be reversed only if arbitrarily made." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). "In reviewing the sufficiency of the evidence supporting probable cause, [the Court] is limited to examining the information contained within the four corners of the affidavit." *United States v. Dyer, II*, 580 F.3d 386, 390 (6th Cir. 2009). In moving the Court to suppress evidence, the burden of proof lies upon the defendant to show a violation of a constitutional or statutory right which justifies suppression. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

In asserting that the search warrant was not supported by probable cause, Ashbourne argues that: 1) the search warrant that was subsequently obtained after the initial warrantless entry was tainted by an illegal search; 2) that the search warrant "does not provide any connection between the UPS package of marijuana and the apartment" (Def.'s Br. at 8); and 3) given that the MMMA permits possession of marijuana under certain circumstances, the law should require more than just the odor of marijuana to establish probable cause to search a residence.

First, given this Court's conclusion that exigent circumstances justified the officers' initial warrantless entry into, and protective sweep of, Apartment Number 128, the Court need not address Ashbourne's argument that the search warrant that was subsequently was tainted by an illegal search.

Second, the Court rejects Ashborne's assertion that the search warrant affidavit provided no connection between the UPS package and the apartment. The search warrant affidavit laid out the facts of how the controlled delivery of the package unfolded. Among other things, it

included that: 1) the officers had observed, when they entered Apartment Number 128 to conduct a protective sweep, amounts of marijuana that were packaged similar to the UPS package at issue; and 2) Ashborne has rental receipts for Apartment Number 128 on his person when he was arrested. In viewing the totality of the circumstances, and examining the information contained within the four corners of the affidavits, the Court finds that there was a fair probability that evidence of a crime would be located on the premises.

Third, the Court flatly rejects Ashbourne's probable cause challenge based on the MMMA.

Ashbourne contends that, given the existence of the MMMA, "the law should be applied that in Michigan, the mere smell of marijuana alone does not support probable cause for a state warrant." (Def.'s Br. at 8). Ashbourne asserts that the MMMA permits possession of marijuana under certain circumstances and therefore "the law should require more than just the odor of marijuana to establish probable cause to search a home." (Def.'s Br. at 9).

There is no federal or state case law creating such a probable cause requirement based on the MMMA. This Court rejects Ashbourne's challenge based on the MMMA for the same reason that such arguments were rejected in *United States v. Chapman*, 2010 WL 3834605 (E.D. Mich. Sept. 27, 2010) (Wherein the court rejected the defendant's argument based on the MMMA "because possession of marijuana remains an offense under federal law and the officers were not required to investigate Defendant's possible defenses prior to securing and executing a search warrant. *Fridley v. Horrighs*, 291 F.3d 867, 874 (6th Cir. 2002); *Ross v. Duggan*, 402 F.3d 575, 586 (6th Cir. 2004).").

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress is

DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  May 14, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 14, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager